UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61373-Civ-SCOLA
Consolidated Case No. 12-61984

DEBORAH ELDREDGE,

    Plaintiff,
vs.

EDCARE MANAGEMENT, INC., and
HOSPITAL PHYSICIAN PARTNERS, INC.

    Defendants.
_____/

## Order Denying Cross-Summary-Judgment Motions

    In this suit for overtime pay under the Fair Labor Standards Act (FLSA), the Plaintiff Deborah Eldredge and the Defendants EDCare Management, Inc. and Hospital Physician Partners, Inc., both move for summary judgment. The parties dispute whether Eldredge's job falls within the administrative exemption to the the FLSA's overtime-pay provision. The parties are also at odds over whether Eldredge has presented sufficient evidence to proceed to the jury on her claim for unpaid wages. Additionally, Eldredge argues that there is no genuine dispute over whether both Defendants were her joint employers under the FLSA. Finally, Eldredge argues that the Defendants have not presented any evidence to support their affirmative defenses regarding their entitlement to a good-faith exception for the FLSA claim, and their entitlement to a setoff from any potential damages award. Since there are genuine disputes of fact regarding all of the issues presented, the cross-motions for summary-judgment motion must be denied.

### 1. Background[1]

    EDCare is a management company that staffs and manages emergency departments in hospitals throughout the United States. Deborah Eldredge was hired as an executive assistant by EDCare, in 2003. Eldredge worked directly for Dr. David Schillinger who was the President and Chief Medical Officer of EDCare. As the executive assistant to Dr. Schillinger, Eldredge's duties included keeping up with Dr. Schillinger's busy meeting and travel schedule,

---

[1] The facts in this background section are not findings made by the Court. The purpose of this section is simply to provide a brief overview of how the parties found their way into federal court.

answering telephones, working with patient records, addressing billing problems, completing Dr. Schillinger's expense reports, and other related tasks.

Eldredge worked long hours and was correspondingly paid handsomely. She treated her position like a career rather than just a job, and was proud of the work that she did for EDCare. During her time working for Dr. Schillinger she grew close to both him and his family. Ultimately, in March 2012, EDCare terminated Eldredge in connection with a planned reduction in force.

Eldredge brought this lawsuit alleging that she was due overtime pay for all hours worked over 40 hours per week, as required by the FLSA. She also claimed that EDCare failed to pay her a cash-out payment for all of her unused leave time that she had accrued at the time of her termination. The Defendants argue that Eldredge was employed in a bona fide administrative capacity and is therefore exempt from the FLSA's overtime-pay requirements. The Defendants also assert that they are entitled to a set-off from any potential damages that Eldredge may recover because Eldredge allegedly violated her duty of loyalty by stealing and misusing confidential corporate documents and misusing a company laptop.

## 2. Summary-Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make

findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

On cross-motions for summary judgment, the Court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010).

### 3. Discussion of Legal Issues

#### A. Summary judgment cannot be granted on the issue of whether Eldredge is exempt from the FLSA's overtime-pay requirements.

The FLSA's overtime-pay provision requires employers to pay an employee at least 1.5 times the employee's regular rate of compensation for all work exceeding 40 hours in one workweek. 29 U.S.C. § 207(a)(1). But if the employee is employed in a bona fide "administrative" capacity, then the employee is exempt from the overtime-pay provision. *Id.* § 213(a)(1). This exemption is narrowly construed against an employer asserting it and is applied to only those circumstances "plainly and unmistakably within [the] terms and spirit" of the exemption. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Hogan v. Allstate Insurance Co.*, 361 F.3d 621, 625 (11th Cir. 2004). "The Act should be interpreted liberally in the employee's favor." *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992). An employer must prove that an exemption applies "by clear and affirmative evidence." *Id.* (internal quotation marks omitted). To determine whether an employee is exempt, courts must look to the regulations promulgated by the Secretary of Labor. 29 U.S.C. § 213(a)(1).[2] "Whether an employee is exempt from overtime requirements is a mixed question of law and fact:" how the employee spent her working time is a question of fact; whether the employee's particular duties excluded her from the overtime benefits of the FLSA is a question of law. *Altemus v. Fed. Realty Inv. Trust*, 490 F. App'x 532, 535 (4th Cir. 2012) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713–14 (1986).

An administrative employee is exempt from the FLSA's overtime-pay requirements if the employee's (1) compensation is not less than $455 per

---

[2] Regulations promulgated by the Secretary of Labor, set out in the Code of Federal Regulations (C.F.R.) must be given "controlling weight unless found to be arbitrary, capricious, or contrary to the statute." *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (2009). In this case, neither party takes issue with the regulations.

week,[3] (2) "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer," and (3) "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  The term 'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).  "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources;" this "does not include clerical or secretarial work."  29 C.F.R. § 541.202(e).  By way of example, "[a]n executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, *without specific instructions or prescribed procedures*, has been delegated authority regarding matters of significance."  29 C.F.R. § 541.203(d) (emphasis added).

In other words, work that presents choices of action predetermined by the nature of the task and the practice in dealing with earlier tasks of identical kind is non-exempt work; work that involves making choices among significantly different possible courses of action, or involving formulations of policy or determinations about novel application of policy formulated by others is exempt work.  *See* Martha M. Cleary, *Who is employed in "administrative capacity" within exemption, under 29 U.S.C. § 213(a)(1), from minimum wage and maximum hours provisions of Fair Labor Standards Act*, 124 A.L.R. Fed. 1, §§ 10-11 (1995).

During her employment with the Defendants, Eldredge wrote a letter to apply for a new position within the company.  (Eldredge Dep. 133:25-134:8 May 30, 2013, ECF No. 43-2.)  In this letter, Eldredge outlines her current role in the company, including:
- that she usually works 50-65 hours per week in the office alone, and that if anyone asks her to handle something, "they know it will be handled – start to finish;"
- fellow employees and clients rely on her to handle whatever is at hand or find the right person who can handle the task;

---

[3] Neither party disputes that Eldredge's compensation was greater than $455 per week.  (*See* Defs.' Stmt Facts ¶ 46, ECF No. 40.)

- she has established a positive, mutually beneficial working relationship with every department within the company;
- that she is an extension of Dr. Schillinger, as well as his representative, since he is rarely in the office;
- she coordinates Dr. Schillinger's complex travel schedule, and manages his meeting schedule for both professional and personal engagements;
- she acts as a liaison with hospital administration regarding patient financial and clinical complaints, billing adjustments, and hospital administration and hospital staff complaints;
- often hospital CEO's, COO's, and administrators contact her when they need something, not necessarily because she is Dr. Schillinger's assistant, but because they want to make sure that the request is handled efficiently;
- she acts as a liaison to the corporate level of healthcare entities the company is involved with;
- she acts as a liaison with numerous hospital CNO's and company managers because she has built a professional relationship with them;
- she manages airplane charters;
- most of her responsibilities require confidential conversations and the review of confidential documents.

(Letter from Deborah Eldredge to Ed. Weinberg, Apr. 12, 2011, (Bates Nos. 461-465) ECF No. 39-2.)

Taken in a vacuum, this letter certainly makes it seem that Eldredge was critical to the operations of the Defendants' business, and that things would likely fall apart without her.  But upon closer inspection and careful consideration, none of the job descriptions in the letter ever refer to Eldredge making a decision or having that type of authority.  Eldredge explained in her deposition, that she was just a clerical secretary and her role with the company was really nothing more than taking and passing along messages – in her words she was a "good messenger." (Eldredge Dep. 135:8-21; *see also* Eldredge Dep. 137:15-17 ("I'm handling their message efficiently.  I'm getting it were it needs to go so that it gets handled appropriately.  That's what a secretary does.").)  Eldredge also notes that her job often consisted of retrieving files for someone else's review and decision.  (*Id.*)

The parties' arguments can be summed up with the following exchange:

Q: Is it true that you saw yourself as the right hand of the company president and chief medical officer?
A: In a lot of ways, yes.
Q: And in what ways did you not?

> A: Not in decision making or authority, but in being helpful.
> Q: What do you mean by that?
> A: You know, helping him to get where he needed to go, taking correct messages for him and following his directions and doing whatever he asked me to do.

(Eldredge Dep. 147:22-148:6.) The record is replete with these types of factual disputes about what Eldredge's job was, what her role with the company was, and what level of decision making authority she actually had.

For example, did Eldredge have the authority to approve charitable contributions from the company to one of its client hospitals? (*Compare* E-mail exchange between Deborah Eldredge & Craig Kushnir, Jan. 3, 2012 (Bates Nos. 527-528), ECF No. 39-2 (appearing that Eldredge has the authority to authorize a $1500 charitable contribution) *with* Eldredge Dep. 107:3-24 ("I certainly didn't authorize the sponsorship.").) Was one of Eldredge's primary duties the responsibility to negotiate with airplane charters and make independent decisions about Dr. Schillinger's travel plans? (*Compare* E-mail exchange between Deborah Eldredge & Richard Gomulka, Dir. of Charter Sales, Nov. 15, 2011 (Bates Nos. 541-545), ECF No. 39-2 (depicting Eldredge making an "executive decision" to cancel a charter flight at the last minute) *with* Eldredge Dep. 115:18-121:8 (describing her role in chartering flights as simply relaying information back and forth, except for a one-time situation where she cancelled a charter because she learned about a last-minute meeting cancellation).)

If one of Eldredge's primary duties was negotiating air-travel contracts, with the authority to commit the company to financially-significant agreements free from specific instructions or prescribed procedures, then her position may be exempt from the FLSA. On the other hand, if this was a single incident, it would not be a part of her primary duties, and would thus not impact the exemption analysis.

The determination of whether Eldredge's particular duties exclude her from the benefits of the FLSA is a question that the Court must, and will, resolve. But not until the fact-finder has untangled – from this hotly-contested record – how Eldredge spent her working time, and under what conditions she performed her primary duties.

### B. Genuine issues of fact exist about whether joint employer liability exists to hold both Defendants responsible for any FLSA violation.

There is a material issue of fact over whether Defendant Hospital Physical Partners, Inc. was an employer of Eldredge under the FLSA. (*Compare* Pl.'s Stmt Facts ¶ 5, 7, & 8, ECF No. 42 *with* Schillinger Decl. ¶ 18, ECF No. 67-1 *and* Grad Decl. ¶ 5, ECF No. 39-4.) It is unclear as to whether Eldredge was working for EDCare using the trade name *Hospital Physician Partners*, or whether she was actually working for the separate corporate entity *Hospital Physician Partners, Inc.*

### C. The Plaintiff's unpaid leave (breach of contract) claim involved disputed questions of fact.

Under Florida law, a claim for unpaid wages frequently takes the form of a breach of contract claim. *See James W. Gardner Corp. v. Twomey*, 496 So. 2d 946, 946 (Fla. 2d DCA 1986) (discussing a claim "for unpaid compensation under an employment contract"); *Coffie v. Dist. Bd. of Trustees, Miami-Dade Cmty. Coll.*, 739 So. 2d 148, 149 (Fla. 3d DCA 1999) (discussing a claim for unpaid wages as a "breach of contract claim"); *but see Ultimate Makeover Salon & Spa, Inc. v. DiFrancesco*, 41 So. 3d 335, 336-37 (Fla. 4th DCA 2010) (tracing a plaintiff's unpaid wage claim as evolving from a claim under the Florida Minimum Wage Act, to claims for "wages owed, unjust enrichment, [and] *quantum meruit*"). In this case, Eldredge's claim is brought under a breach of contract theory. (*See* Pl.'s Mot. Summ. J. 11, ECF No. 47 (citing case law in support of her unpaid wage claim that refers to breach-of-contract/unpaid wage claims[4]).)

The Defendants have failed to establish that there is no genuine issue as to whether they breached their employment contract with Eldredge. The Defendants assert that, consistent with company policy, the parties agreed that

---

[4] Eldredge argues four cases in support of her unpaid wage argument: *Ferry v. XRG Int'l, Inc.*, 492 So. 2d 1101 (Fla. 4th DCA 1986), *Speer v. Mason*, 769 So. 2d 1102 (Fla. 4th DCA 2000), *Strasser v. City of Jacksonville*, 655 So. 2d 234 (Fla. 1st DCA 1995), and *Coleman v. City of Hialeah*, 525 So. 2d 435 (Fla. 3d DCA 1988). *Ferry*, *Speer*, and *Strasser* all involve breach-of-contract claims. *Ferry*, 492 So. 2d at 1102 (discussing the claim as a "wrongful breach of the parties' employment contract"); *Speer*, 769 So. 2d at 1103 (describing the case as being based upon the "compensation agreement"); *Strasser*, 655 So. 2d at 235 (noting that "a contract existed between the parties [and] that the [Defendant] breached the contract"). *Coleman* does not discuss a contract but that does not matter because it is not an "unpaid wages" case. *Coleman*, 525 So. 2d at 435.

7

upon an employee's termination the employee would be paid for all unused leave accrued that year, but that an employee would never be paid for unused leave carried over from a previous year. From this, the Defendants conclude that Eldredge's claim that she is owed a payout for her unused leave carried over from the previous year is inconsistent with their employment contract. To establish this critical fact, the Defendants cite to Eldredge's own deposition. But in that same deposition Eldredge disputes what the parties' agreement was with respect to the payout for unused leave carried over from a previous year. (*See* Eldredge Dep. 54:19-55:14, ECF No. 43-2.)

In this breach of contract claim, there is a dispute over the terms of the parties' employment contract. Accordingly, summary judgment cannot be granted on this issue.

### D. Summary judgment cannot be granted on the Defendants' affirmative defenses of good faith & setoff.

The Court also denies summary judgment as to both of the Defendants' affirmative defenses. There are genuine issues of fact as to whether the Defendants acted in good faith and had reasonable grounds for believing that they were not violating the FLSA. (*See* Schillinger Decl. ¶¶ 4-14, ECF No. 67-1.) There are also disputed facts regarding the setoff issue. (*Compare* Pl.'s Stmt Facts ¶¶ 55-58, ECF No. 42 *with* Defs.' Resp. Stmt Facts ¶¶ 55-58, ECF No. 68.)

## 4. Conclusion

Since genuine issues of material facts permeate every issue of this case it is **ordered** that both the Plaintiff's Motion for Summary Judgment (ECF No. 47) and the Defendants' Motion for Summary Judgment (ECF No. 39) are **denied**.

**Done and Ordered** in chambers, at Miami, Florida, on November 21, 2013.

_____
**Robert N. Scola, Jr.**
**United States District Judge**