UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CONSOLIDATED CASE NO. 13-61373-CIV-SCOLA**

DEBORAH ELDREDGE,

    Plaintiff,

v.

EDCARE MANAGEMENT, INC., a Delaware corporation, and HOSPITAL PHYSICIAN PARTNERS, INC., a Delaware corporation,

    Defendants.
_____/

**DEFENDANTS' RENEWED MOTION FOR A SANCTIONS HEARING,
BASED ON PLAINTIFF'S MASSIVE THEFT OF CONFIDENTIAL INFORMATION
FROM DEFENDANTS, HER PLAN TO BLACKMAIL THEIR EXECUTIVES, AND
<u>HER CONCEALMENT OF THESE MATERIALS DURING DISCOVERY</u>**

Defendants EDCare Management, Inc. ("EDCare") and Hospital Physician Partners, Inc., pursuant to the inherent powers of this Court, Rule 37 of the Federal Rules of Civil Procedure, and the Order of this Court dated November 21, 2013, respectfully submit this renewed motion for sanctions against Plaintiff, including a request for an evidentiary hearing to consider the sanction of dismissal. This Court expressly provided an opportunity for certain discovery by Defendants into the Plaintiff's belated admission that she retained documents from Defendants, which would enable Defendants to renew their sanctions motion. As it turns out, Plaintiff stole three boxes, two thumb drives, and a disc filled with massive amounts of confidential business information, financial statements, client lists, agreements with various employees, emails from various mailboxes, and many other materials that she had no legitimate purpose to possess, take, keep, or conceal during discovery. Quite telling is the belated

production of some of Plaintiff's emails from her personal email address, which not only undermine the merits of her claims, but also confirm her plan to stockpile information with which to try to blackmail the Defendants and their executives. In other words, this case is a fruit of her (criminal) misconduct.

In support of this motion, Defendants incorporate by reference their original motion for sanctions (DE 31) and state as follows:

**Background**

1.      On November 21, 2013, this Court consolidated two actions that Plaintiff had filed separately. In one action, she claimed that she did not receive all required compensation upon termination, arguing in part that she was not actually serving as an exempt Executive Assistant because she just typed and answered the telephone. In the other action, she claimed that the simultaneous termination of her along with more than 50 other employees did not constitute a reduction in force, and that notwithstanding that she had been paid approximately or more than twice the salary of the other Executive Assistants, her (at-will) employment status somehow protected her from being terminated with the others because she was allegedly more qualified than some employees who were not fired. With this inconsistency as a backdrop, the Court *sua sponte* consolidated these actions.

2.      In the November 21st Order consolidating the cases, notwithstanding the close of discovery in the first-filed case, this Court explained it "will allow the Defendants to take the necessary discovery in light of the last-minute production of documents that were taken from the Defendants by the Plaintiff during her employment." 11/21/13 Order at 1. At the time, Defendants and the Court contemplated a deposition of Plaintiff

concerning a box of Defendants' documents that she had belatedly disclosed she took upon or before her termination. Plaintiff had failed to produce those documents when demanded by Defendants upon termination and failed to produce them during the period for discovery, right through summary judgment proceedings in the earlier-filed, now-consolidated FLSA action. Plaintiff did not acknowledge that she possessed such materials until after the Magistrate Judge issued an Order dated November 8, 2013, requiring a further production by Plaintiff in December 2013 arising from what she had led everyone to believe involved only a few pieces of company materials such as organization charts. That Order required that Plaintiff "shall conduct a diligent search for any other documents in her possession which are the property of the Defendants and turn them over to Defendants' counsel." 11/8/13 Order at 7. As it turned out, Plaintiff had misappropriated and failed to produce upon demand for the return of such information or at any time during discovery, *three boxes, two thumb drives, and a disc* consisting of highly confidential material, client lists, financials, agreements, emails from various employees' mailboxes, a copy of the CEO's laptop and business notebook (which could only have been removed by theft because Plaintiff did not work directly for that CEO), and other sensitive records, none of which had been provided to Defendants in time for summary judgment briefing, which had concluded months earlier. At her deposition, she could offer no business reason for having those three boxes, two thumb drives, and disc, let alone for keeping and concealing such records during discovery.

3. Even before the revelation of this tremendous volume of stolen, sensitive material, the November 21st Order specifically invited a renewed motion by Defendants for sanctions, explaining that "[c]onsolidation will also allow sufficient time for the

3

Defendants to renew their request for sanctions regarding the previously withheld materials." 11/21/13 Order at 1.  Based on the volume and content of Plaintiff's misappropriation, as well as her evasive responses about why she has the materials and what she has done with them, Defendants hereby accept the Court's invitation to renew their sanctions motion.

4.      When Defendants previously moved for sanctions, they did so based on the incorrect belief that Plaintiff retained only a handful of documents belonging to Defendants.  Even then, Plaintiff retaliated by filing frivolous motions for sanctions (including one that accused successor counsel of *prolonging* this case by *withdrawing* one of the potential affirmative defenses).  All of Plaintiff's sanctions motions were summarily denied, though they put Defendants through the burden of multiple rounds of motion practice and burdened the Court and Defendants with a hearing.

**Documents Withheld in Discovery Undermine Plaintiff's Claims and Reveal Her Plan to Blackmail Defendants' Executives**

5.      In the prior sanctions motion, Defendants believed some stolen documents with confidential information remained in Plaintiff's possession because a couple of them had been used at a deposition, even though she did not produce them in response to written demands for the return of all company property and despite document requests calling for their production.[1]

6.      The belated production of stolen material was accompanied by various old emails that Plaintiff printed out, dated years ago, and stockpiled along with the stolen confidential information.

---

[1] When using these documents, Plaintiff's counsel also had refused to enter into a confidentiality agreement to protect them.

4

7. Plaintiff did not produce these emails during discovery, or prior to the completion of summary judgment proceedings, in the first-filed Fair Labor Standards Act case that is now consolidated with her companion case claiming a wrongful termination of her at-will employment.

8. In one such email that she withheld, Plaintiff confirmed in writing material information that undermines her arguments that she exercised no discretion and was micromanaged. In an email dated August 23, 2008, Plaintiff wrote to the Chief Medical Officer's wife stating that she

> reads everything that passes my eyes to make sure [the CMO] knows things that effect [sic] him and give him the heads up on business things because he is too busy working shifts to hold the company together …[and] the CEO's of hospitals and healthcare entities like Iasis, managers of departments in the hospital that have been given my name as someone who can get anything done….medical directors, managers all throughout EDCare and CFS,, etc. call me DIRECTLY…not just because I am David's assistant..often when it is about something that doesn't involve David and they can't understand why they call me???? They call me because I am reliable…dependable..INTELLIGENT…a person who will take care of whatever needs to be taken care of professionally **and without being micromanaged.**

A copy of this email is attached hereto as Exhibit A (emphasis added). By withholding this email among her stolen confidential business records during discovery in the FLSA case, Plaintiff avoided questioning on an admission that goes to the heart of her theory that she is not the typical exempt Executive Assistant, under the administrative exemption, because she was micromanaged. Her choice <u>not</u> to search for and produce such records before the extensive summary judgment briefing has substantially prejudiced Defendants in connection with their right to avoid the FLSA claims as a matter of law.

9. Plaintiff admitted in writing that she worked "without being micromanaged." It is fundamentally unfair, and a fruit of her criminal theft and concealment of information from Defendants, that she deprived Defendants of the ability to use these materials on their summary judgment motion against the FLSA claims.

10. Why did Plaintiff stockpile three boxes, two thumb drives, and a disc of stolen material from Defendants? At her deposition, she was too evasive for Defendants to elicit a credible answer. Another email that she had concealed in discovery during the FLSA case sheds some potential light on the answer. In an email that she printed out on December 2, 2008, as dated on the bottom of the page, Plaintiff stated:

> …The liars and thieves of edc[are] profit while I stand by looking stupid. It wouldn't be very smart of them to piss me off because I have enough to put more than a few of their precious executive staff in prison or at the very least ruin their careers and cause them great financial pain… Sad I would have to blackmail to get what I want but if you swim with sharks maybe you have to be one.

A copy of this email is attached hereto as Exhibit B.

**Plaintiff's Deposition**

11. A copy of the transcript for Plaintiff's recent deposition is attached hereto as Exhibit C.

12. Amazingly, at her deposition, Plaintiff acknowledged that she *still* has not even searched her other emails for documents responsive to Defendants' discovery requests. Tr. at 49-50. Plaintiff also acknowledged spoliation, among other things believing (but unsure) she got rid of a computer that stored her information while this action was pending, by selling it at a yard sale or leaving it outside to be picked up by

someone. *Id.* at 47-48. So much for the "diligent" search for materials that this Court ordered her to conduct.

      13.     Throughout her recent deposition, Plaintiff remained evasive and claimed a lack of recollection. She could not provide a legitimate explanation of why she misappropriated three boxes, two thumb drives, and a disc of highly confidential company material. Repeatedly she denied having a business reason for taking those documents, often stating "I don't know" of any reason, or "I don't recall." 1/13/14 Tr. at 113-122.

      14.     At her deposition, Plaintiff denied any legitimate basis for threatening or blackmailing anyone who worked for Defendants, notwithstanding the threats in her emails. One part of the exchange included the following:

    Q.    There's no such thing as a good faith reason to blackmail someone, right?

    A.    Not that I know of.

    Q.    People aren't supposed to go around blackmailing each other, right?

    A.    Correct.

    Q.    They are not supposed to stockpile a bunch of information to, how did you put it, put the precious executive staff in prison or at the very least ruin their careers. There's no good faith reason to do that, is there.

MS. DAVIS: Objection to form.

THE WITNESS: Not that I recall.

        \*      \*      \*      \*

    Q.    Why did you write to David Schillinger's wife while you were stockpiling those things at home?

MS. DAVIS: Objection to form.

THE WITNESS:    I don't know.

Tr. at 121-22.

**Legal Standards**

15. There could not be a more classic situation that cries out for an evidentiary hearing to determine the facts and, if bad faith were found, the appropriate remedy including dismissal. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1251 (11th Cir. 2007) (requiring remand where initially the trial court based more than $400,000 in sanctions against Plaintiff's counsel's firm, the Amlong firm, in part on different fact findings than those made by a magistrate judge, but explaining that the "the district court need not conduct a new hearing" and could either "accept the magistrate judge's basic findings of fact and then reach its own determination as to whether the lawyers' conduct was objectively unreasonable and vexatious" or it could "conduct its own hearing as a prelude to making a new determination" of appropriate sanctions); *see also Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010) (affirming more than $387,000 in sanctions after *Amlong* hearing conducted on remand); *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) (explaining how "inherent power extends to a full range of litigation abuses"); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1301, 1305-06 (11th Cir. 2009) (approving use of inherent powers to sanction a party with a default for "secretly monitoring" an adversary's "confidential communications"); *McDowell v. Seaboard Farms of Athens, Inc.*, No. 95-609-CIV-ORL-19, 1996 WL 684140, at *2 (M.D. Fla. Nov. 4, 1996) (inherent power includes "the sanction of dismissal in response to abusive litigation practices"); *Herrera v. Clipper Group, L.P.*, No. 97–CIV–560 (SAS), 97–CIV–561 (SAS), 1998 WL 229499, at *2 (S.D.N.Y. May 6, 1998) ("[t]he discovery process is not meant to be supplemented by the unlawful conversion of an adversary's proprietary information"); *Glynn v. EDO Corp.*,

Civil No. JFM–07–01660, 2010 WL 3294347, at *5 (D. Md. Aug. 20, 2010) (imposing sanctions because it is inappropriate to "surreptitiously acquire" internal company "documents outside of the normal discovery channels"); *Ashman v. Solectron Corp.*, No. C 08-1430 JF (HRL), 2008 WL 5071101, at *2 (N.D. Cal. Dec. 1, 2008) (outlining various sanctions utilized by courts to remedy self-help discovery); *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 435 (W.D. Wash. 2002) (dismissing suit as sanction for misconduct including theft of company documents), *aff'd*, 78 F. App'x 588 (9th Cir. 2003); *Herrera*, 1998 WL 229499, at *1-2 (holding theft of employer's confidential files "demonstrates contempt" and warrants sanctions); *Furnish v. Merlo*, Civ. No. 93–1052–AS, 1994 WL 574137, at *11 (D. Or. Aug. 29, 1994) (ordering supplemental filings to determine appropriate remedy as sanction for improper copying and removal of confidential company documents); *Lipin v. Bender*, 597 N.Y.S.2d 340, 340 (N.Y. App. Div. 1993) (affirming dismissal of complaint "as a sanction for plaintiff's improperly obtaining and using confidential documents"), *aff'd*, 644 N.E.2d 1300 (N.Y. 1994).

16.     Here, the record reflects that Plaintiff stockpiled voluminous confidential business records, ranging from client lists to financial statements to employment agreements to emails from various mailboxes.  She failed to return them when demanded upon her termination.  She failed to produce them in response to discovery requests for them.  She failed to produce them during summary judgment proceedings in the FLSA action.  Her counsel suggested there were a handful.  Then her counsel suggested there was a box.  Then they produced three boxes, two thumb drives, and a disc of stolen materials with no legitimate explanation at the time and no legitimate explanation at Plaintiff's subsequent deposition.  Plaintiff even had to admit under oath

9

her ongoing failure to search her personal emails for documents responsive to long-overdue requests. Even some of what she produced belatedly unduly prejudiced Defendants because they would have benefitted from the materials at the summary judgment stage. Yet neither Plaintiff nor her counsel has performed such a search to this day. Neither of them has supplemented their production since her deposition based on such a search.

17. It appears that Plaintiff thinks she knows how to "game" a litigation. As would be demonstrated at a sanctions hearing, other documents reflect her efforts, during an earlier personal injury action, to manipulate Defendants' response to a subpoena when she still worked for EDCare.

18. As part of "gaming" this Court and this case, Plaintiff seems to think that saying "I don't know" at a deposition gets her a free ride that limits the ability to impeach her at a jury trial. Before she ever enjoys such a trial, however, this Court should conduct an *Amlong* evidentiary hearing to determine whether dismissal or some other sanctions would be most appropriate. *See Amlong, P.A.*, 500 F.3d at 1251. At that hearing, repeating a mantra of "I don't know" or other evasive responses might not enable her to game this Court or this case as much as she seems to think it can.

## Conclusion

WHEREFORE, Defendants respectfully request that the Court allow this motion for an evidentiary hearing on their renewed sanctions motion.

VERIFICATION OF COUNSEL

I, Barry S. Pollack, state that I have read the foregoing Motion and that the contents therein are true and correct to the best of my knowledge. I have read the foregoing and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of February 2014.


                s/  Barry S. Pollack
                Barry S. Pollack

RESPECTFULLY SUBMITTED this 14th day of February, 2014.

    By:    */s/ Rene Gonzalez-LLorens*
    **SHUTTS & BOWEN LLP**
    Joseph M. Goldstein, Esq.
    Florida Bar No.:  820880
    Email: JGoldstein@shutts.com
    Rene Gonzalez-LLorens
    Florida Bar No. 53790
    Email: rllorens@shutts.com
    Fort Lauderdale, Florida 33301
    Telephone: (954) 847-3803
    Facsimile: (954) 527-7914

    **POLLACK SOLOMON DUFFY LLP**
        Barry S. Pollack (appearing *pro hac vice*)
    133 Federal Street
    Boston, Massachusetts 02110
    (617) 439-9800 (telephone)
    (617) 960-0490 (facsimile)
    bpollack@psdfirm.com (email)

    **ATTORNEYS FOR DEFENDANTS EDCARE MANAGEMENT, INC. and HOSPITAL PHYSICIAN PARTNERS, INC.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed electronically with the Court via CM/ECF with copies automatically served via email on William R. Amlong, Esq. and Jennifer Daley, Esq., Amlong & Amlong, P.A., 500 Northeast Fourth Street, Second Floor, Fort Lauderdale, Florida, 33301-1154 this 14th day of February 2014.

/s/ Rene Gonzalez-LLorens
OF COUNSEL

MIADOCS 8804942 1